UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| **KAREN CEGALIS**<br>Plaintiff<br><br>v.<br><br>**TRAUMA INSTITUTE &**<br>**CHILD TRAUMA INSTITUTE INC.**<br>**and RICKY GREENWALD IN HIS INDIVIDUAL**<br>**CAPACITY and**<br>**BAMBI RATTNER IN HER INDIVIDUAL**<br>**CAPACITY   and**<br>**Defendants** | ) Civil No. 2:19-cv-153<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S FIRST COMPLAINT

NOW COMES Plaintiff, Karen Cegalis by and through her attorneys, Law Offices of Thomas C. Bixby, LLC., and hereby COMPLAINS and ALLEGES of the Defendants as follows:

### NATURE OF THE CASE

This is a case asserting abuse of process, breach of the covenant of good faith and fair dealing both under the common law in Vermont and M.G.L. 93A and 176D law of Massachusetts, negligent infliction of emotional distress, breach of professional negligence, defamation, parental alienation and punitive damages. Defendants Trauma Institute Inc., Ricky Greenwald and Bambi Rattner used unethical, improper and unauthorized use of the Court process resulting in damage to the Plaintiff for which she seeks compensation, and the award of costs including but not limited to attorney fees.

### I. PARTIES AND JURISDICTION

1. Plaintiff Karen Cegalis is currently a resident of the Town of Bradford, County of Orange, State of Vermont.

2. Plaintiff Karen Cegalis brought suit against Raymond Knutsen and Marilynn Knutsen for

1

parental alienation along with other claims which is pending in the Rutland Superior Court, City of Rutland, County of Rutland and State of Vermont, Docket No. **238-4-15 Rdcv**.

3. Defendant Trauma Institute & Child Trauma Institute Inc., hereinafter the "Institute" is a not for profit corporation with a principal place of business at 285 Prospect Street, Town of Northampton, County of Hampshire, Commonwealth of Massachusetts.

4. Defendant Ricky Greenwald is a psychologist with a practice at Defendant Institute.

5. Defendant Bambi Rattner is a psychologist with a practice at Defendant Institute.

6. Defendant Ricky Greenwald supervised the work of Bambi Rattner.

7. Plaintiff brings this action pursuant to **28 U.S.C. §1332**, as the parties are citizens of different states and the amount in controversy exceeds the jurisdiction amount of $75,000.00, exclusive of interests and costs.

## II. STATEMENT OF FACTS

8. Karen Cegalis has a son, minor L.C., who through Father, Raymond Knutsen and Step-Mother, Marilynn Knutsen falsely accused Karen Cegalis and her boyfriend at the time of sexual abuse (**Exhibit 2**, Family Court Order 2/10/15).[1]

9. Karen Cegalis at the insistence of Raymond Knutsen and Marilynn Knutsen has been investigated by the Chittenden Unit of Special Investigators, the Vermont State Police, the Rutland State's Attorney, the Chittenden State's Attorney, the FBI and Homeland Security. All agencies have determined that the allegations could not be substantiated.

10. A Rutland Family Court also took testimony and held a Hearing on the allegations and found that the allegations stem from hysteria on the part of Raymond Knutsen and

---

[1] **Exhibit 1** is an Index of Exhibits.

Marilynn Knutsen.

11. Raymond Knutsen retained Defendant Institute and Defendants Rattner and Greenwald to provide EMDR Therapy and be experts in the civil litigation regarding the parental alienation claim.

12. At the time, there was a Family Court Order not to rehash the allegations of abuse, but rather to reunify Karen Cegalis and her son through counseling.

13. In spite of the Vermont Family Court Order, the Defendants, jointly and severally, engaged in therapy that encouraged the minor L.C. to believe he was sexually abused by his mother Karen Cegalis, reinforcing false traumas.

14. EMDR Therapy is highly suggestive and can create false memories in patients, especially in children.

15. Defendant Bambi Rattner as an agent of Defendant Institute testified that the abuse actually occurred by Plaintiff Karen Cegalis.

16. Further, Defendant Bambi Rattner testified as an agent of Defendant Institute in the Rutland Superior Court that minor L.C. should not be engaged in reunification with his mother Plaintiff Karen Cegalis as was ordered by the Rutland Vermont Family Court.

17. Defendant Ricky Greenwald also testified against Plaintiff Cegalis in the Family Court matter testifying that allowing the biological mother to have contact with her minor son would place the child in danger without any objective basis for this opinion.

18. Defendant Greenwald also testified in the Family Court Hearing that the alleged abuse occurred which is in stark contrast to all of the criminal investigations that were done.

19. Defendants Greenwald and Rattner, jointly and severally, through their counseling engaged in creating false traumas in minor L.C. causing further alienation. This resulted

in reports by Defendants, testimony by Defendants, contact with law enforcement agencies by Defendants and attorneys resulting in false accusations of sexual abuse by Plaintiff on minor L.C.

20. On June 26, 2018, the Massachusetts Board of Registration of Psychologists entered into "Consent Agreements" with Defendants Dr. Rattner and Dr. Greenwald for taking on a child custody evaluator role when their financial interests and their relationship with the minor's father and/or stepmother impaired their impartiality, competency and effectiveness. (**Exhibits 3** and **4**, respectively attached hereto).

21. Defendants Rattner and Greenwald acknowledged that if there was a formal prosecution by the Board that the Board could have found that by providing psychological services to the minor L.C. they reinforced a false trauma and failed to address an actual trauma caused by the minor child's Father and/or Step-Mother's actions.

22. Also, Defendants Rattner and Greenwald acknowledged that if the matter went to prosecution, the Board could find Defendants conducted inadequate examinations of the child to formulate their diagnosis and opinions regarding minor L.C. in violation of American Psychological Association's Ethical Principles of Psychologists and code of Conduct.

23. By Defendants acts and neglects, jointly and severally, Plaintiff has been imprisoned in a life without contact with her only child, a life filled with mental pain, resulting in physical symptoms. The sustained damages are set forth more fully below.

24. The acts of Defendants Rattner and Greenwald were done by and through the corporate entity, Defendant Institute.

25. As such, Defendant Institute was negligent in the retention, supervision, direction and

control of Defendants Rattner and Greenwald.

26. Defendant Institute is liable to Plaintiff pursuant to the common law doctrine of *respondeat superior*, agency theory and/or the command responsibility doctrine.

27. The acts of the Defendants do not stop with their counseling, reports, notes and testimony. Defendants took retaliatory measures against Plaintiff's Expert Dr. Eric Mart by reporting Dr. Eric Mart to the Vermont Board of Psychologists **after** Defendants were found to be in violation by the Massachusetts Board of Psychologists.

28. Reporting Plaintiff's Expert Dr. Eric Mart to the Vermont Board of Psychologist has tolled Plaintiff's civil action in the Rutland Superior Court against the Knutsens as Plaintiff cannot proceed until the allegations against Dr. Mart are sorted out by the Vermont Board of Psychologists causing many hours of wasted judicial and attorney resources.

29. The acts of Defendants, jointly and severally, were retaliatory, intentional, done with malice aforethought and willful against the Plaintiff for her reporting Defendants to the Massachusetts Board of Psychologists.

30. The false reports, false trauma thrust upon her minor son, false testimony and retaliatory actions of Defendants have been devastating to Plaintiff and have delayed Plaintiff from re-trying her case and having her day in Court.

31. Defendants asserted false allegations without any basis in fact and without proper training on how to interview a child.

32. Defendant Rattner admitted she did not know the nationally accepted standard of interview techniques of a child alleging abuse.

33. Defendants failed to even make contact with Plaintiff to interview her about the

accusations of minor L.C.

34. Defendants failed to read one investigative report or the Court findings stating that the abuse stemmed from hysteria.

35. Defendants when interviewing the minor L.C. allowed Step-Mother to be present during the interview and counseling sessions and, at times, allowed her to interject during the interview and sessions.

36. Defendants failed to read or take into consideration prior psychological evaluations and counseling reports of the minor L.C. in their counseling of the minor.

37. Plaintiff's counsel subpoenaed the "entire file" of Defendants' work with the minor.

38. However, it was discovered during the testimony of Rattner that the "entire file" was not produced as part of the subpoena. Time entries, notes and documents were absent from the documents produced.

39. The failure to produce said documents hamstrung Plaintiff's ability to fully cross-examine Defendant Rattner.

40. Defendants, jointly and severally, misrepresented material facts against Plaintiff including reports, notes and testimony.

41. This Court has jurisdiction over both the parties and the subject matter.

### COUNT I. ABUSE OF PROCESS

42. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 41, above, as if fully set forth herein.

43. Defendants committed abuse of process by:

    a. knowingly creating false notes; and/or

    b. knowingly provided false opinions; and/or

    c.    knowingly provided false conclusions; and/or

    d.    knowingly provided false reporting on a material issue i.e., that Plaintiff committed heinous acts and allowed acts of sexual and emotional abuse on her minor son; and/or

    e.    provided false testimony under oath;

    f.    committed unethical professional counseling; and/or

    g.    committed retaliatory acts; and/or

    h.    failed to produce L.C.'s entire file pursuant to a subpoena; and/or

    i.    These acts listed in a-h above along with other such acts constitutes an improper and unauthorized use of the court process.

44. Defendants, jointly and severally, had an ulterior motive and the purpose was to defame, falsely accuse, and incarcerate Plaintiff and implant false memories in minor L.C. resulting in further alienation of the minor child L.C. from Plaintiff.

45. Defendants abuse of process, jointly and severally, was in direct contradiction to a Rutland Family Superior Court Order not to revisit the alleged trauma.

46. Defendants, jointly and severally, knew or should have known at the outset of the treatment of the Family Court findings that the allegations stemmed from nothing but hysteria.

47. Defendants conduct, jointly and severally, was unethical and in violation of Massachusetts rules of Ethics for Psychologists. (See **Exhibits 3** and **4**)

48. Defendants engaged in conduct to prevent Plaintiff from knowing the full extent of their role by failing to produce the entire file of the counseling and billing records.

49. In engaging in conduct as outlined above in paragraphs 1-48, Defendants, jointly and

severally, utilized the Court process for false reporting, false testimony, failing to fully comply with a subpoena and creating false trauma in minor L.C. This increased Plaintiff's attorney fees and costs and violated Plaintiff's due process rights.

50. By Defendants acts and neglects in engaging in an abuse of process, Defendants utilized discovery and the court process in an improper manner in an attempt to have Plaintiff denied her both State and U.S. Constitutional rights to due process, a fair and impartial jury, and to obtain fair and just compensation for her harms and losses.

51. Defendants conduct was an attempt to have Plaintiff criminally charged with child sexual abuse in a conspiracy with Father Raymond Knutsen and Step-Mother Marilynn Knutsen.

52. As a direct and proximate result of Defendants' abuse of process, Plaintiff sustained damages as set forth more fully below.

## COUNT II. BREACH OF GOOD FAITH AND FAIR DEALING

53. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 52, above, as if fully set forth herein.

54. Defendants were retained by Father Raymond Knutsen to provide re-unification therapy between minor L.C. and Plaintiff Mother pursuant to a Rutland Superior Court Order.

55. Instead of providing re-unification therapy, Defendants engaged in EMDR Therapy and reinforced false trauma of abuse in minor.

56. Every agreement for professional services such as the one entered into by Defendants contains, by law, a covenant of good faith and fair dealing.

57. Massachusetts has codified the act of good faith and fair dealing under M.G.L. Chapter 93A and 176D which sets forth bad faith as:

    a. Failing to acknowledge and act reasonably, promptly upon communications with

       respect to claims arising under insurance policies; and/or

  b.    Failing to adopt and implement reasonable standards for prompt investigation of claims arising under insurance policies; and/or

  c.    Refusing to pay claims without conducting a reasonable investigation based upon all available information; and/or

  d.    Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; and/or

  e.    Compelling insured to institute litigation to recover amounts due under an insurance policy while offering substantially less than the amounts ultimately recovered in actions brought by such insured; and/or

  f.    Failing to settle claims promptly, where liability has become reasonably clear; and/or

  g.    Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

The Act also covers acts of individuals in breaching the common law standard of good faith and fair dealing.

58.    Plaintiff provided Defendants' attorney with a pre-suit Letter. (**Exhibit 5**).

59.    In response to the pre-suit letter, Defendants denied claims of the Plaintiff and refused to settle the claim. (**Exhibit 6**).

60.    The violation of or any one of these sections and a breach of the common law duty of good faith and fair dealing constitute a separate and distinct unfair act or practice. Pursuant to **M.G.L. 93A,** Plaintiff seeks statutory damages, including but not limited to

attorney fees, costs and treble damages as the denial of the claim occurred in Massachusetts, the treatment occurred in Massachusetts, the notes were taken in Massachusetts and the opinions were formed in Massachusetts as such Massachusetts law should be applied on this issue.

61. In the alternative Plaintiff also asserts Vermont's common law duty of good faith and fair dealing.

62. Professionals such as the Defendants owe a duty of good faith and fair dealing when engaging in counseling and treatment of patients such as minor L.C. following their ethical obligations.

63. Defendants breached this duty by violating their ethical codes of conduct, implanting false memories in minor L.C., by accusing Plaintiff of abusing minor L.C. further alienating minor from Plaintiff by Defendants' counseling.

64. Defendants acts and neglects, jointly and severally, both under Vermont law and Massachusetts law breached the covenant of good faith and fair dealing.

65. As a direct and proximate result of the acts and neglects of Defendants, jointly and severally, Plaintiff hereby seeks damages as set forth more fully below.

### COUNT III. PROFESSIONAL NEGLIGENCE OF DEFENDANTS

66. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 65, above, as if fully set forth herein.

67. In the providing psychological services to Plaintiff's minor son L.C., Defendants, jointly and severally, owed a professional standard of care to Plaintiff including but not limited to exercising that degree of knowledge, skill, prudence, diligence and standard of care customarily exercised by other psychologists engaged in the practice of child psychology

in both Vermont and Massachusetts.

68.  Plaintiff submits that such a duty entails at a minimum, a duty to counsel Plaintiff's minor child L.C. in a diligent and professional manner according to the standard of ethical practices in the field of psychology.

69.  Defendants, joint and severally, violated Vermont Family Court Orders in their counseling of Plaintiff's minor son L.C. by encouraging false memories of sexual abuse by Plaintiff and her then partner.

70.  Defendants deviated from the standard of care owed to the Plaintiff by:

   a.  providing psychological services to the minor L.C. Defendants reinforced false traumas and failed to address an actual trauma caused by the minor child's Father and/or Step-Mother; and/or

   b.  conducted inadequate examinations of the child to formulate their diagnosis and opinions regarding minor L.C. in violation of American Psychological Association's Ethical Principles of Psychologists and Code of Conduct;

   c.  Failed to properly and diligently provide proper psychological treatment to minor L.C., causing L.C. to be more fearful of Plaintiff; and/or

   d.  Failed to properly communicate to the Plaintiff and/or include Plaintiff in the psychological counseling and/or

   e.  Failed to exercise the ordinarily reasonable skill and knowledge commonly possessed by a member of the psychological profession in counseling minor L.C.; and/or

   f.  Breached the duty of good faith and fair dealing; and/or

g. Defendant Institute was negligent in the retention, supervision, direction and control of Defendants Rattner and Greenwald and is liable to Plaintiff pursuant to the common law doctrine of *respondeat superior*, agency theory and/or the command responsibility doctrine: and/or.

h. Caused the negligent infliction of emotional distress to Plaintiff by Defendants' acts, jointly and severally, by reinforcing false traumas has caused further estrangement from Plaintiff and her minor son L.C. along with loss of consortium with her son; and/or

i. negligently and/or recklessly made certain defamatory statements about the Plaintiff; and/or

j. committed false testimony in violation of the Oath taken by Defendants to tell the truth, the whole truth and nothing but the truth; and/or

k. Defendants, jointly and severally, breached their ethical obligations; and/or

l. Was otherwise negligent in the handling of the Plaintiff's minor son L.C.[2]

71. As a direct and proximate result of Defendants, joint and several, acts of professional negligence, acts, neglects and deviation from the standard of care, Plaintiff suffered damages as set forth more fully below.

## COUNT IV. CIVIL CONSPIRACY

72. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through

---

[2] See **Exhibit 7** of Testimony of Bambi Rattner in Rutland Superior Court pg 59, ln 6-11.; 59, ln 17-22;
**Exhibit 8** – Testimony of Dr. Greenwald Rutland Family Court pg 24, ln 5-11; pg 25, ln 12-14;pg 26, ln 9-17; pg, 39, ln 19-24.
Exhibit 3 Stipulation of Defendants Greenwald and Rattner of ethical violations.

12

71 as set forth fully herein.

73. Defendants conspired with one another, as well as other individuals and entities, to perpetrate an unlawful act upon Plaintiff or to perpetrate a lawful act by unlawful means to wit:

   a. Defendants at the behest of Raymond Knutsen and Marilynn Knutsen implanted false memories upon minor L.C. (**Exhibit 9** Letter of Dr. Knutsen to Truama Institute); and/or

   b. The intent and purpose to portray Plaintiff as an abuser of minor L.C. and/or an accessory to abuse; and/or

   c. Defendants, jointly and severally, acted in concert with Raymond Knutsen and Marilynn Knutsen to cause parental alienation between minor L.C. and Plaintiff; and/or

   d. Wrote notes, reports and provided testimony as part of the conspiracy; and/or

   e. Aided and abetted Dr. Raymond Knutsen's and Marilynn Knutsen's intent to prosecute Plaintiff for the allegations of abuse upon minor L.C.; and/or

   f. The intent of Defendants' acts, joint and several, was to harm Plaintiff and to further alienate Plaintiff from minor son, L.C.; and/or

   g. Committed other acts of a civil conspiracy.

74. The participants in the conspiracy, including Defendants, put their own pecuniary interests ahead of the welfare and safety of Plaintiff.

75. As a direct and proximate result of Defendants' participation in and furtherance of the conspiracy, Plaintiff has suffered damages as set forth more fully below.

## COUNT V. DEFENDANTS ACTS CONSTITUTE A PRIMA FACIE INTENTIONAL TORT

76. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 75 as set forth fully herein.

77. Defendants, jointly and severally, intentionally caused injury to Plaintiff by and through their conduct, counseling of minor, ignoring Family Court Orders, failing to review prior psychological reports and investigations into said allegations, and to meeting the basic principles of ethical conduct for psychologists and, as such, Defendants are liable to the Plaintiff for her injuries. Said acts are considered to be prima facie acts pursuant to **the Restatement Second of Torts Section 870**.

78. As a direct and proximate result of Defendants, joint and several, prima facie acts, Plaintiff suffered damages as set forth more fully below

## COUNT VI. DEFAMATION

79. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 78 as set forth fully herein.

80. Defendants, jointly and severally, have made false statements both verbal and written of alleged child sexual abuse against Plaintiff and reinforced false traumas in Plaintiff's minor son L.C.

81. Defendants, jointly and severally, have made such statements to law enforcement, attorneys, parties and Courts of Law both Superior and Family.

82. Every law enforcement agency that has investigated these false allegations has found them not to be credible. No charges have ever been brought against the Plaintiff.

83. The nature of the allegations of sexual abuse are those of a criminal nature and, as such, qualify as **slander per se**.

84. The defamation, libel and slander by Defendants Rattner and Greenwald were done on behalf and through the corporate Defendant Institute.

85. The defamation is in notes and counseling session and is made to parties, attorneys, law enforcement, Courts of Law and to the general public.

86. Defendants assert expert witness immunity.

87. Vermont does not have a blanket immunity and allows for acts outside of testimony to be considered to be defamatory.

88. Moreover, providing false testimony against the Plaintiff flies in the face of the integrity of the Court, Plaintiff's due process rights and the oath taken by the Defendants Rattner and Greenwald to tell the truth, the whole truth and nothing but the truth.

89. It is time to examine and challenge the per se rule of expert witness immunity, especially in cases such as this one where there is a finding by an Ethical Board that Defendants Greenwald and Rattner have breached their ethical obligations.

90. As a direct and proximate result of Defendants' joint and several acts of defamation, Plaintiff suffered damages as set forth more fully below.

**COUNT VII. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

91. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 90 as set forth fully herein.

92. The conduct of Defendants, jointly and severally, reinforcing false trauma, providing improper counseling services, not following Court Orders not to revisit the allegations of sexual abuse, improper interview techniques of the minor, failing to comply with a subpoena, providing false notes, reports, testimony, and retaliatory conduct by reporting Plaintiff's expert to the Vermont Psychological Professional Conduct Board, constitutes

outrageous conduct which was done intentionally or with a willful, wanton and reckless disregard of the probability of causing emotional distress to the Plaintiff, and which in fact did result in the suffering of extreme emotional distress which was a direct and proximate result of Defendants' joint and several conduct.

93. Defendants' conduct, jointly and severally, was so outrageous in character and so extreme in its nature as to go beyond all possible bounds of decent and tolerable conduct in a civilized community and is regarded as atrocious and utterly intolerable.

94. As a direct and proximate result of Defendants conduct, jointly and severally, Plaintiff has suffered emotional distress as set forth more fully below.

## COUNT VIII. PUNITIVE DAMAGES

95. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 94 as set forth fully herein.

96. Defendants' conduct, jointly and severally, complained of herein was a willful and intentional breach of duty done in a willful and wanton disregard of the Plaintiff's rights for which she seeks punitive damages.

97. Defendants engaged in wrongful conduct toward Plaintiff and, in doing so, acted with bad motive, personal ill, personal spite, hatred and a reckless disregard for the Plaintiff.

98. Defendants acted, jointly and severally, with evident insult and oppression towards the Plaintiff and engaged in actions against the Plaintiff having the character of outrage frequently associated with a crime.

99. Defendants' actions, jointly and severally, were reprehensible, egregious and patently outrageous subjecting Defendants, jointly and severally, to punitive damages.

100. The actions of the Defendants, jointly and severally, set out in this Complaint

proximately caused Plaintiff's damages.

## AD DAMNUM

As the further and proximate result of Defendants' negligence and breaches of duty, jointly and severally, Karen Cegalis seeks damages for pain and suffering past, present and future. Plaintiff Karen Cegalis seeks damages in an amount appropriate to compensate her for her damages. Plaintiff has suffered and will continue to suffer emotional damages including but not limited to pain and suffering and diminution of her enjoyment of life and loss of consortium and society with her minor son L.C. As such, Plaintiff seeks damages in an amount sufficient to compensate her for her damages including but not limited to past, present and future damages for physical pain, suffering emotional damages, loss of consortium, loss of society, humiliation, economic damages for the cost of litigating false accusations, counseling costs and other equivalent out of pocket expenses. Plaintiff seeks punitive and/or statutory damages as well based upon the intentional, wanton, willful and reckless disregard of Defendants' acts and neglects, jointly and severally, to Plaintiff.

WHEREFORE, Plaintiff prays for compensatory, hedonic, medical, economic damages, statutory damages and treble damages to adequately compensate her for her damages in excess of the minimum jurisdiction of this Court, with attorneys' costs, costs of suit and all other such costs as this Honorable Court deems just and appropriate, including **punitive damages**.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS**

DATED at Town of Rutland, in the County of Rutland and State of Vermont, this 4th day of September 2019.

Karen Cegalis
Plaintiff,

*signature: B C. B*

Thomas C. Bixby, Esq.
Law Offices of Thomas C. Bixby, LLC
1213 US 7 N
P.O. Box 6856
Rutland, Vermont 05702
Attorneys for the Plaintiffs
802-775-3229
tcblawvt@gmail.com