## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF VERMONT

KAREN CEGALIS,                           :
                                         :
          Plaintiff                      :
                                         :
          v.                             :    Case No. 2:19-cv-00153
                                         :
TRAUMA INSTITUTE AND                     :
CHILD TRAUMA INSTITUTE,                  :
et. al.                                  :
                                         :
          Defendants.                    :

### OPINION AND ORDER: DEFENDANTS' MOTION TO DISMISS

(ECF 5)

Plaintiff Karen Cegalis brings suit against Defendants Trauma Institute and Child Trauma Institute, Ricky Greenwald, and Bambi Rattner for abuse of process, breach of the covenant of good faith and fair dealing, prima facie intentional tort, negligent infliction of emotional distress, breach of professional negligence, defamation, and punitive damages. Defendants now file this motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

For the reasons discussed below, Defendants' motion to dismiss is **granted** in part and **denied** in part.

### Factual Background

This action arises out of a custody dispute between Plaintiff, her minor son, L.C., and his father and stepmother, Raymond and Marilynn Knutsen. During this dispute, the Knutsens

1

accused Plaintiff Cegalis of sexually abusing L.C. and making threats against them and L.C. Plaintiff contends that these allegations are baseless and have caused irreparable damage to her relationship with her son, amounting to personal injury. The Chittenden Unit for Special Investigations, the U.S. Department of Homeland Security, the Rutland Police Department, and the Department for Children and Families have each investigated the sexual abuse allegations made against Plaintiff, and they have each been unable to substantiate them with any evidence. **ECF 1-2 at 1.** In an Order issued on February 10, 2015 (hereafter "The Family Court Order," the Rutland Family Court concluded that the allegations were not founded in any facts in the record and appeared to be the products of hysteria on the part of the Knutsens. **ECF 1-2 at 10.** The Rutland Family Court also granted Raymond Knutsen continued sole custody of L.C. and ordered a stop to reunification efforts with Plaintiff Cegalis out of concern for L.C.'s psychological best interest.

As a part of its Order on February 10, 2015, the Rutland Family Court directed Raymond Knutsen to obtain the services of a qualified child trauma therapist for L.C., subject to multiple conditions. **ECF 1-2 at 13.** The Court ordered that Cegalis have full right of access to L.C.'s therapy records subject to confidentiality provisions unless the therapist determined that such access would contravene L.C.'s best interests. **ECF 1-2 at**

2

**13.** The Court also barred the Knutsens from intervening in
L.C.'s therapy in any way. **ECF 1-2 at 13.** Notably, the Family
Court issued these instructions in response to its findings that
the Knutsens had made multiple attempts to interfere in L.C.'s
past therapy experiences by both reinforcing a narrative about
Cegalis' alleged abusive behavior and by seeking to undermine
the credibility of his past therapist. ***See* ECF 1-2 at 2-11.** The
Family Court Order sought to prevent these same problems from
repeating in L.C.'s next trauma therapy experience by limiting
the Knutsens' ability to interfere and by giving Plaintiff
Cegalis qualified access to therapy records. The Court also
ordered that Raymond Knutsen provide proof of L.C.'s engagement
in treatment, and that the therapist be permitted to communicate
with the attorneys in this case. **ECF 1-2 at 14.**

Raymond Knutsen hired Defendants to provide L.C. with EMDR
therapy and to testify as experts in litigation concerning
Plaintiff's parental alienation. Plaintiff alleges that
Defendants encouraged L.C. to believe that he was sexually
abused by her through EMDR therapy. On June 17, 2017, Defendant
Rattner testified in Rutland Superior Court that L.C. should not
be reunited with Plaintiff. **ECF 1-7.** Defendant Greenwald also
testified that Plaintiff should not have contact with L.C. on
account of past abuse in the parent-child relationship. **ECF 1-8.**

Defendants Greenwald and Rattner were professionally disciplined for their work on L.C.'s case. On June 26, 2018, the Massachusetts Board of Registration of Psychologists entered into a consent decree with both Rattner and Greenwald for having taken on a child custody evaluation role when their impartiality and effectiveness was compromised. **ECF 1-3, ECF 1-4.** Both defendants attested that, if the matter went to a hearing, the Board could find that they had conducted inadequate examinations of the minor child and his mother to support a diagnosis and recommendation. **ECF 1-3 at 2, ECF 1-4 at 2.**

## Jurisdiction

This court has proper diversity jurisdiction over this case under 28 U.S.C. § 1332. The parties are residents of different states and the amount in controversy exceeds $75,000.

## Standard of Review

On a motion to dismiss pursuant to Rule 12(b)(6), the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a

4

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678.

## Discussion

### I.  Abuse of Process

First, Plaintiff submits that Defendants committed the tort of abuse of process by providing false testimony under oath, failing to produce documents subject to subpoena, and threatening Plaintiff's expert witness with a professional misconduct complaint in a related parental alienation case. **See ECF 1-7, 1-8**. Taking her factual allegations to be true, Plaintiff's claim regarding Defendants' non-testimonial actions passes muster under Fed. R. Civ. P. 12(b)(6).

As a general principle, the tort of abuse of process is reserved for situations in which a defendant uses a legal process against another to accomplish a purpose for which it was not intended. *Jacobsen v. Garzo*, 149 Vt. 205, 207 (1988). To state an abuse of process claim under Vermont law, a plaintiff must plead and prove: (1) an illegal, improper or unauthorized use of a court process; (2) an ulterior motive or an ulterior purpose; and (3) resulting damage to the plaintiff. *Id.* at 208. "There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Id.* (citation omitted). There must

be allegations of "irregular steps taken under cover of process
after its issuance, and damage resulting therefrom." *Italian
Star Line v. United States Shipping Board Emergency Fleet
Corp.,* 52 F.2d 359, 361 (2d Cir. 1931); *see also* 1 Am. Jur.
2d *Abuse of Process* §§ 2, 13 (action for abuse of process "is
concerned with the improper use of process after it has been
issued"). Many courts have also found abuse of process where an
individual harasses a litigation opponent by clearly wrongful
conduct. *See General Refractories Co. v. Fireman's Fund Ins.
Co.,* 337 F.3d 297 (3d Cir. 2003).

First, the court must determine whether Plaintiff has a
viable abuse of process claim against Defendants as non-party
witnesses who provided false testimony at trial. Under Vermont
law, the answer is no. In *Cunningham v. Brown,* 18 Vt. 123, 126
(1846), the Vermont Supreme Court held that a plaintiff may not
bring a tort action against a witness who gave false testimony
in a prior case. Witnesses enjoy broad "testimonial privilege"
which grants them immunity from damages sought in a later civil
suit based on allegedly false testimony. *See O'Connor v.
Donovon*, 191 Vt. 412, 427 (2012); *Andrews v. Steinberg*, 471
N.Y.S.2d 764, 771 (Sup. Ct. 1983).

In the case at bar, Defendants testified against
Plaintiff's suitability for parental reunification with L.C.
based on conclusions that they reached through possible

professional negligence. Despite the evidence that Defendants'
testimony lacked professional veracity, contentions under oath
in a previous trial are immune from civil suit. While there are
limited exceptions to the testimonial privilege (namely, where
the case involves a malicious prosecution claim or a criminal
conviction of perjury), none apply here. *See id.* Hence,
Plaintiff has failed to state a claim that Defendants committed
abuse of process by providing alleged false testimony.

Next, Plaintiff makes an abuse of process claim based on
Defendants' alleged non-testimonial actions – first, due to
their failure to produce documents subject to subpoena. This
claim survives Defendants' Rule 12(b)(6) motion. Plaintiff
alleges that Defendants' delaying tactics sought to undermine
her parental reunification efforts, damage her relationship with
L.C., and cause her reputational harm in the community. A
party's non-compliance at trial could viably qualify as an
improper use of a court process with ulterior motive to damage
the Plaintiff. Taking all factual allegations in the Complaint
to be true, Plaintiff has stated a plausible claim of abuse of
process.

Additionally, Plaintiff's abuse of process claim concerning
alleged threats made by Defendants against Plaintiff's expert
witness, Dr. Mart, also survives this Rule 12(b)(6) motion.
Plaintiff proffers that Defendants made these threats to

discourage Dr. Mart from testifying and to retaliate against him
professionally if he did so. Taking Plaintiff's factual
allegations to be true, and making all inferences in her favor,
her claim meets the requirements of abuse of process under
Vermont law for the purposes of Rule 12(b)(6). Indeed, she has
stated in her pleadings that Defendants took an irregular action
(threatening her expert witness) during the litigation process
with ulterior motive to cause a negative collateral effect,
thereby harming her position. As such, Defendants' motion to
dismiss on the abuse of process claim is denied on this issue.

## II.   Breach of Good Faith and Fair Dealing ("Bad Faith")

Defendants contend that Plaintiff has failed to state a
claim for breach of good faith and fair dealing under Vermont
common law because the parties never enjoyed a relationship of
contractual privity. Plaintiff argues, however, that a
contractual relationship did exist because Defendants were hired
pursuant to the Family Court Order. The Family Court Order
delineated requirements for both the therapist and Plaintiff to
abide by over the course of the therapeutic relationship—
including that Plaintiff retain a qualified right to access
L.C.'s therapy records, that the therapist maintain contact with
Plaintiff's attorney to ensure L.C. was receiving therapy, and
that the Knutsens refrain from interfering in therapy as they
had done in the past. **ECF 1-2 at 13-14.** According to Plaintiff,

the Family Court Order created a contractual relationship between her and the Defendants, and Defendants breached the covenant of good faith and fair dealing that was implied within said contract. Plaintiff has stated a plausible claim under Fed. R. Civ. P. 12(b)(6).

Here, the parties disagree as to whether Plaintiff and Defendants were bound by privity of contract on account of the Family Court Order's instructions that each abide by certain requirements during L.C.'s time in therapy. Under Vermont law, the covenant of good faith and fair dealing is implied in every contract. *LoPresti v. Rutland Regional Health Services, Inc.*, 177 Vt. 316, 332 (2004). "Bad faith" is not an independent tort; it arises only where there is an underlying contract. *Murphy v. Patriot Ins. Co.*, 197 Vt. 438, 443 (2014). In a case with similar facts, *Politi v. Tyler*, 170 Vt. 428, 434 (2000), the Vermont Supreme Court found that a psychologist retained by parties pursuant to a family court order "owed whatever duties of care to plaintiff . . . the contract provided." In other words, the parties were in privity of contract with one another based on the agreement that emerged out of the family court's order.

In this case, Raymond Knutsen entered a contractual relationship with the Defendants in accordance with the Family Court Order, and the Court's instructions vis-à-vis Plaintiff's

obligations and rights are a salient part of that order. **ECF 1-2 at 12-13.** The Rutland Family Court required the Knutsens to follow many more instructions regarding therapy than the family court did in *Politi*, likely due to their record of intervening in L.C.'s therapy to the detriment of Plaintiff. **ECF 1-2 at 2-10.** Moreover, the Court's instructions regarding L.C.'s trauma therapy created legally binding duties; the ensuing rights and responsibilities necessarily became a part of Raymond Knutsen's eventual contract with Defendants.

Additionally, because the Family Court Order made explicit reference to Plaintiff's rights and limitations during the therapy, these requirements also would transfer to the ensuing contract upon which Defendants were hired. *See id.* at 429; *see also* Rule 5(a) of the Rules for Family Proceedings. Because the Family Court Order explicitly delineates proper accountability measures between Plaintiff and L.C.'s therapist (e.g. Plaintiff's qualified right to access therapy records, proof of L.C.'s continued engagement in treatment), Plaintiff has stated a plausible claim that Defendants owed contractual duties to her based on the Family Court Order and the ensuing retainer agreement. Defendants' motion to dismiss on this issue is denied.

Plaintiff further alleges that Defendants violated their duty of good faith and fair dealing under Massachusetts General

Laws 93(A) and 176(D). This argument lacks merit because
Defendants are not in the "business of insurance," which is a
necessary element of any claim arising under Mass. Gen. L. C.
176D. *D'Agostino v. Fed. Ins. Co.*, No. 12-11628-DJC, 2014 WL
858333 (D. Mass. 2014). Massachusetts courts have found that
companies in the "business of insurance" include any entities
which make "profit driven business decisions about premiums,
commissions, marketing, reserves and settlement policies and
practices." *Id.* Plaintiff has not plausibly alleged that
Defendants, who are psychologists, engaged in any of these
activities. Defendants' motion to dismiss on this issue is
granted.

   III. Professional Negligence

      Defendants submit that Plaintiff has failed to state a
claim of professional negligence because L.C., not Plaintiff,
was their client. As a result, Defendants argue that they did
not owe Plaintiff a professional duty of care. Plaintiff puts
forth two arguments to establish that she was owed a duty of
care. First, she submits that mental health professionals owe
nonpatient parents a limited professional duty to abstain from
recklessly giving rise to false memories or false allegations of
childhood sexual abuse by the parent. In essence, Plaintiff asks
the court to extend a limited "transferred negligence" doctrine
used by some jurisdictions in the sexual abuse context here.

Second, Plaintiff once again submits that Defendants had a contractual relationship with her arising out of the Family Court Order, which obligated Defendants to provide her with a professional duty of care. The court denies Defendants' motion to dismiss on this issue based on Plaintiff's latter argument.

Defendants correctly note that, under Vermont law, a psychologist only owes a duty of care to third parties in limited circumstances, such as when a patient poses a serious risk of danger to an identifiable victim. *Peck v. Counseling Service of Addison County, Inc*., 146 Vt. 61 (1985). Vermont courts have not established a transferred negligence doctrine establishing a duty of care owed by mental health professionals to parents of a therapeutic client to not negligently create false memories of sexual abuse. Because this court is bound by the Vermont Supreme Court's precedent and establishment of public policy, the court declines to apply such a doctrine here. *See Maska U.S., Inc. v. Kansa Gen. Ins. Co.,* 198 F.3d 74, 80 (2d Cir. 1999) (stating that "[w]e must ... bear in mind that in a diversity case the federal courts are not free to develop their own notions of what should be required by the public policy of the state, but are bound to apply the state law as to these requirements.") (quoting *Cornellier v. Am. Cas. Co.,* 389 F.2d 641, 644 (2d Cir. 1968)); *Smith v. Day,* 148 Vt. 595, 599 (1987) (evaluating and rejecting public policy arguments of

plaintiff seeking to expand common law duty of care to
university for actions of students, and observing that the
public policy arguments favored by plaintiffs were "contrary to
established judicial precedent.").

However, Plaintiff's assertion that the Family Court Order
may have established a duty of care between Defendants and
Plaintiff has merit. *In Peck*, the Vermont Supreme Court
identified three instances in which such a "special
relationship" would give rise to a legal duty to control, warn
and/or protect: (1) where the relationship "gives the one a
definite control over the actions of the other [;]" (2) where
the relationship imposes a "duty upon one to control the actions
of another[;]" and (3) where the relationship "gives a third
person a right to protection." *Peck,* 146 Vt. at 65 (citations
omitted).

It is beyond the court's role to determine whether the
Family Court Order did establish a special relationship between
Plaintiff and Defendants at this stage, as this is a question of
fact for a jury. However, Plaintiff has made a plausible claim
that the Family Court Order gave her a limited "right to
protection" during L.C.'s course of therapy – a right to
specifically be protected from harmful interference in the
trauma therapy by the Knutsens. As discussed in the previous
section, the Rutland Family Court explicitly barred the Knutsens

from engaging in such interference, and it put in place specific accountability measures between Plaintiff and therapist to prevent a repetition of the past harms that the Court discusses in the Family Court Order. For the purposes of Fed. R. Civ. P. 12(b)(6), it is plausible that Plaintiff and Defendants stood in a professional contractual relationship that create a duty of care between them. As such, Defendants' motion to dismiss on this issue is denied.

IV.  <u>Prima Facie Intentional Tort</u>

Defendants aver that Plaintiff has failed to state a claim for a prima facie intentional tort. In her pleadings, Plaintiff alleged that Defendants' actions (e.g. counseling L.C. without consulting prior psychological reports or following the Family Court's instructions) constitute a prima facie intentional tort pursuant to § 870 of the Restatement of Torts. Defendants respond, however, that Vermont courts have not adopted § 870, and there is no legal basis for a prima facie tort claim in this instance. Defendants prevail on their argument, and their motion to dismiss on this issue is granted.

The Vermont Supreme Court has never decided to recognize prima facie tort liability under § 870 of the Restatement of Torts. *Fromson v. State*, 176 Vt. 395, 402 (2004). Once again, this court is bound by precedent under Vermont law and may not independently recognize a new cause of action. Moreover, even if

prima facie tort were clearly recognized under Vermont law, Plaintiff has not stated a plausible claim. As both the Vermont Supreme Court and other jurisdictions have established, a prima facie tort claim is typically unavailable where it rests "upon conduct that is well within the area of activity meant to be regulated by a traditional tort, and which is insufficient to establish that tort." *Id*. at 403 (citation omitted). "Prima facie tort may not be used to evade the 'essential elements of traditional tort.'" *Id.* (citation omitted).

Here, Plaintiff's prima facie intentional tort claim is based on the theory that Defendants' actions intentionally injured her by creating fear and revulsion toward her in her child, which has caused psychological harm to Plaintiff. In essence, this is a claim within the arena of intentional infliction of emotional distress, a traditional tort. Plaintiff may not allege a prima facie tort in order to circumvent the requirements of a specific intentional tort. *Id*. at 404. Hence, she has failed to state a claim for prima facie intentional tort, and Defendants' motion to dismiss on this ground is granted.

V.   Negligent Infliction of Emotional Distress

Defendants also argue that Plaintiff has failed to state a viable claim for the negligent infliction of emotional distress (NIED). As a general matter, "absent physical contact, one may

15

recover for negligently caused emotional distress only when the distress is accompanied by substantial bodily injury or sickness." *Fitzgerald v. Congleton,* 155 Vt. 283, 292 (1990). However, the Vermont Supreme Court has acknowledged multiple exceptions to this rule, including contexts such as in "the mishandling of bodily remains", where there exists a special relationship, and where there have been undertakings that are "fraught with the risk of emotional harm." *Vincent v. DeVries*, 193 Vt. 574, 583 (2013).

In dicta, the *DeVries* Court pointed to the D.C. Court of Appeals' current NIED standard as a helpful guide for evaluating such claims. Under that standard, a plaintiff may recover for negligent infliction of emotional distress if the plaintiff can show that (1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff. *Id.* at 583 (quoting *Hedgepeth v. Whitman Walker Clinic,* 22 A.3d 789, 810-11 (D.C. App. 2011)).

Following the Vermont Supreme Court's guidance in *DeVries*,
Plaintiff has made a plausible claim of NIED under Fed. R. Civ.
P. 12(b)(6). The Family Court Order established obligations that
were envisioned to flow from Defendants to Plaintiff regarding
L.C.'s course of therapy. In light of the sensitive nature of
this case, the impressionability of a child in a custody dispute
undergoing EMDR therapy, and the high stakes of the parent-child
relationship, there was considerable risk here that any
negligence on the part of Defendants would have led to emotional
distress. Finally, based on the consent decrees indicating
negligent provision of care on behalf of Defendants, Plaintiff
has made a plausible factual allegation of a breach of
Defendants' professional obligation that caused serious
emotional distress. As such, Defendants' motion to dismiss is
denied on this issue.

VI.  Defamation

Next, Defendants submit that Plaintiff has failed to state
a plausible claim for defamation, slander, or libel, as
Defendants' testimony in the civil trial is subject to witness
privilege. Defendants prevail on their argument. The Complaint
alleges that Defendants' statements that Plaintiff abused L.C.
were defamatory, libelous, and slander per se. Plaintiff
contends that "[t]he defamation is in notes and counselling
session and is made to parties, attorneys, law enforcement,

17

Courts of law, and to the general public." **ECF 1 at 15.** Because these materials appear to have been published to the public solely through court testimony and exhibits, Defendants hold that they are protected from suit through witness immunity.

Under Vermont law, witnesses enjoy absolute immunity for testimonial acts. *Couture v. Trainer*, 205 Vt. 319, 325-26 (2017). However, the witness immunity doctrine does not extend to non-testimonial acts. *Politi*, 170 Vt. at 434. In this case, Defendants' statements reached the public solely through trial exhibits and their testimony. There is no plausible indication that Defendants' non-testimonial acts, such as their counselling notes and interactions with law enforcement and parties, were published so as to trigger a possible defamation, slander, or libel claim. As such, Defendants' statements are protected under witness immunity. The motion to dismiss on this issue is granted.

VII. <u>Civil Conspiracy</u>

Defendants contend that Plaintiff has not stated a plausible civil conspiracy claim in her pleadings. This argument lacks merit. In order to establish a claim for civil conspiracy under Vermont law, a plaintiff "must be damaged by something done in furtherance of the agreement, and the thing done [must] be something unlawful in itself[.]" *Akerley v. N. Country Stone, Inc.*, 620 F. Supp. 2d 591, 600 (D. Vt. 2009) (internal quotation

marks omitted) (quoting *Boutwell v. Marr,* 42 A. 607, 609 (Vt. 1899)). Under Vermont law, "[a]ll who aid in the commission of a tort by another, or who approve of it after it is done, *if done for their benefit,* are liable in the same manner as they would be if they had done it with their own hands." *Montgomery v. Devoid,* 181 Vt. 154, 164 (2006) (quoting *Dansro v. Scribner,* 187 A. 803, 804 (Vt. 1936)). The Second Restatement of Torts describes tort liability for persons acting in concert as follows:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.... Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. The agreement need not be expressed in words and may be implied and understood to exist from the conduct itself.

Restatement (Second) of Torts § 876 (1979).

Plaintiff has made plausible factual allegations that Defendants acted in concert with Raymond and Marilynn Knutsen to engage in the torts discussed above. She attests that Defendants defied the Family Court Order at the behest of the Knutsens, and that Defendants' rendered professionally negligent psychological opinions in collusion with them to her detriment. Taking

Plaintiff's factual allegations to be true, she has made a plausible claim that the Defendants engaged in the allegedly tortious actions discussed above in collaboration with the Knutsens, who had technically hired them pursuant to the Family Court Order. As such, Defendant's motion to dismiss is denied on this issue.

## VIII.   Statute of Limitations

Finally, Defendants claim that Plaintiff's personal injury claims are time barred by a three-year statute of limitations. However, this argument lacks merit. Plaintiff filed this action on September 4, 2019. *See* **ECF 1**. While Plaintiff submits that her cause of action accrued at the time of the testimony (on or about June 7, 2017), Defendants counter that the cause of action accrued in 2015, when the Family Court issued its order and Defendants provided L.C. with therapy. Defendants also argue that Plaintiff failed to allege sufficient facts to affirmatively show that her complaint was timely. The court finds that Plaintiff's personal injury claims are not time-barred.

Under Vermont law, claims for damages resulting from "emotional distress" are governed by 21 V.S.A. § 512(4). See *Fitzgerald,* 155 Vt. at 291-293. Section 512 requires that causes of action be commenced "within three years after the cause of action accrues." 21 V.S.A. § 512. "A cause of action is

generally deemed to accrue at the *earliest* point at which a
plaintiff discovers an injury and its possible cause." *Earle v.
State*, 170 Vt. 183, 190 (1999).

In the case at bar, Plaintiff could not have discovered any
alleged negligence on behalf of Defendants until they testified
in June of 2017. Defendants' actions occurred within the
confines of a private therapeutic relationship with L.C., and in
light of Plaintiff's limited interactions with him under the
custody arrangement, it is plausible that she was not made aware
of these injuries until Defendants' court appearance. As such,
Plaintiff's cause of action plausibly accrued in June of 2017,
which was within three years of her filing the case. Plaintiff's
claims are not time barred, and Defendants' motion to dismiss on
this ground is denied.

IX.   <u>Punitive Damages</u>

Finally, Defendants submit that Plaintiff's claim for
punitive damages should be discarded under Fed. R. Civ. P.
12(b)(6) because "a claim for punitive damages is not a stand-
alone claim." **ECF 5 at 14.**

Defendants are correct that punitive damages are not a
stand-alone cause of action, but a matter of remedies decided
upon by a jury as a question of fact. *Eldridge v. Rochester City
Sch. Dist.*, 968 F. Supp. 2d 546, 563 (W.D.N.Y. 2013). A claim
for exemplary damages may nonetheless be the subject of

a Rule 12(b)(6) motion for failure to state a claim on the grounds that this type of damages is not available as a matter of law or because the grounds for such damages have not been plausibly pled. *See Carvel Corp. v. Noonan*, 350 F.3d 6, 23-26 (2d Cir. 2003). Under Vermont law, punitive damages are available in instances of "especially egregious conduct." *Connors v. Dartmouth Hitchcock Med. Ctr.*, 12 F. Supp. 3d 688, 695 (D. Vt. 2014).

Plaintiff has put forth a significant factual basis for potentially egregious conduct in this case: namely, alleged failures by the Defendants to abide by professional standards and the Family Court Order in providing therapy to L.C. with serious consequences of personal injury. As such, Plaintiff has stated a plausible claim that this form of damages may be available. Because punitive damages are an issue of fact for a jury's determination, the court will issue instructions on awarding punitive damages by the jury at trial based upon all of the evidence.

## Conclusion

For the aforementioned reasons, Defendants' motion to dismiss for failure to state a claim (ECF 5) is **granted** in part and **denied** in part.

DATED at Burlington, in the District of Vermont, this 30th day of April, 2020.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge