UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

KAREN CEGALIS,                          :
                                        :
        Plaintiff                       :
                                        :
        v.                              :   Case No. 2:19-cv-00153
                                        :
TRAUMA INSTITUTE AND                    :
CHILD TRAUMA INSTITUTE,                 :
et. al.                                 :
                                        :
        Defendants.                     :

## OPINION AND ORDER: DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION

(ECF 14)

Plaintiff Karen Cegalis brings suit against Defendants Trauma Institute and Child Trauma Institute, Ricky Greenwald, and Bambi Rattner for abuse of process, breach of the covenant of good faith and fair dealing, negligent infliction of emotional distress, breach of professional negligence, and punitive damages. On April 30, 2020, this Court ruled on Defendants' motion to dismiss, granting it in part and denying it in part. Defendants now file this motion for judgment on the pleadings and lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and (c). For the reasons discussed below, Defendants' motion is **denied.**

**Background**

The facts of this case as alleged in the Complaint were summarized in the Court's Order on April 30, 2020, **ECF 10**, and are largely restated here. This action arises out of a custody dispute between Plaintiff, her minor son, L.C., and his father and stepmother, Raymond and Marilynn Knutsen. During this dispute, the Knutsens accused Plaintiff Cegalis of sexually abusing L.C. and making threats against them and L.C. Plaintiff contends that these allegations are baseless and have caused irreparable damage to her relationship with her son, amounting to personal injury. The Chittenden Unit for Special Investigations, the U.S. Department of Homeland Security, the Rutland Police Department, and the Department for Children and Families have each investigated the sexual abuse allegations made against Plaintiff, and they have each been unable to substantiate them with any evidence. **ECF 1-2 at 1.** In an Order issued on February 10, 2015 (hereafter "The Family Court Order,") the Rutland Family Court concluded that the allegations were not founded in any facts in the record and appeared to be the products of hysteria on the part of the Knutsens. **ECF 1-2 at 10.** The Rutland Family Court also granted Raymond Knutsen continued sole custody of L.C. and ordered a stop to reunification efforts with Plaintiff Cegalis out of concern for L.C.'s psychological best interest.

As a part of its Order on February 10, 2015, the Rutland Family Court directed Raymond Knutsen to obtain the services of a qualified child trauma therapist for L.C., subject to multiple conditions. **ECF 1-2 at 13.** The Court ordered that Cegalis have full right of access to L.C.'s therapy records subject to confidentiality provisions unless the therapist determined that such access would contravene L.C.'s best interests. **ECF 1-2 at 13.** The Court also barred the Knutsens from intervening in L.C.'s therapy in any way. **ECF 1-2 at 13.** Notably, the Family Court issued these instructions in response to its findings that the Knutsens had made multiple attempts to interfere in L.C.'s past therapy experiences by both reinforcing a narrative about Cegalis' alleged abusive behavior and by seeking to undermine the credibility of his past therapist. ***See* ECF 1-2 at 2-11.** The Family Court Order sought to prevent these same problems from repeating in L.C.'s next trauma therapy experience by limiting the Knutsens' ability to interfere and by giving Plaintiff Cegalis qualified access to therapy records. The Court also ordered that Raymond Knutsen provide proof of L.C.'s engagement in treatment, and that the therapist be permitted to communicate with the attorneys in this case. **ECF 1-2 at 14.**

Raymond Knutsen hired Defendants to provide L.C. with EMDR therapy and to testify as experts in litigation concerning Plaintiff's parental alienation. Plaintiff alleges that

Defendants encouraged L.C., through EMDR therapy, to believe
that he was sexually abused by her. On June 17, 2017, Defendant
Rattner testified in Rutland Superior Court that L.C. should not
be reunited with Plaintiff. **ECF 1-7.** Defendant Greenwald also
testified that Plaintiff should not have contact with L.C. on
account of past abuse in the parent-child relationship. **ECF 1-8.**
Defendants Greenwald and Rattner were professionally disciplined
for their work on L.C.'s case.

## Discussion

I.   Use of the Family Court Order in This Court's April 30,
     2020 Order

Defendants have moved for judgment on the pleadings under
Fed. R. Civ. P. 12(c). "The same standard applicable to Fed. R.
Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P.
12(c) motions for judgment on the pleadings." *Bank of N.Y. v.
First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) (citing
*Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994)). Thus the
Court "accept[s] all factual allegations in the Complaint as
true and draw[s] all reasonable inferences in the nonmoving
party's favor." *Vega v. Hempstead Union Free Sch. Dist.*, 801
F.3d 72, 78 (2d Cir. 2015) (internal quotation marks omitted).
In their motion for judgment on the pleadings, Defendants argue
that this Court "essentially rewrote the Family Court Order to
dramatically change the relationship between the trauma

4

therapist and Karen Cegalis." **ECF 14 at 2**. They argue that "[h]ad the Family Court wished to suggest an iota of an obligation between the therapist and Karen Cegalis, it would have allowed her at a minimum to select and hire the therapist," and that "[t]here is nothing in the explicit language or the entirety of the Family Court Order that creates an actionable claim by Karen Cegalis against the trauma therapist." **ECF 14 at 6-7.** According to Defendants, "[t]his Court appropriately considered the Family Court Order attached to the complaint but it is fundamental that a federal court cannot rewrite a state court order." **ECF 14 at 8.**

This Court is not trying to rewrite the Family Court Order; nor is this Court trying to interpret the Family Court Order for the parties. This Court examined the Family Court Order for the sole purpose of seeing whether, in the context of a motion to dismiss with all inferences drawn for Plaintiff, Plaintiff has made out a plausible claim. Thus, the Court did not rewrite the Family Court Order to change the nature of the relationship of the therapists to Cegalis. Rather, the Court applied the burdens of a motion to dismiss, drawing all reasonable inferences for the nonmoving party. This Court never found that Defendants violated a contractual relationship contained in the Family Court Order or that the Family Court Order established a special relationship between Plaintiff and Defendants. Instead, this

Court found that Plaintiff stated plausible claims under Fed. R. Civ. P. 12(b)(6). **ECF 10 at 9-10, 13, 17, 19.** In denying Defendants' Motion for Summary Judgment on the "Bad Faith" claim, this Court found in part that "[b]ecause the Family Court Order explicitly delineates proper accountability measures between Plaintiff and L.C.'s therapist (e.g. Plaintiff's qualified right to access therapy records, proof of L.C.'s continued engagement in treatment), Plaintiff has stated a plausible claim that Defendants owed contractual duties to her based on the Family Court Order and the ensuing retainer agreement." **ECF 10 at 10.** In denying Defendants' Motion for Summary Judgment on the professional negligence claim, this Court wrote that "[i]t is beyond the court's role to determine whether the Family Court Order did establish a special relationship between Plaintiff and Defendants at this stage, as this is a question of fact for a jury. However, Plaintiff has made a plausible claim that the Family Court Order gave her a limited 'right to protection' during L.C.'s course of therapy". *Id.* **at 13.** In denying Defendants' Motion for Summary Judgment on the negligent infliction of emotional distress claim, the Court found, among other things, that "Plaintiff has made a plausible claim of NIED under Fed. R. Civ. P. 12(b)(6)" where the "Family Court Order established obligations that were envisioned to flow from Defendants to Plaintiff regarding L.C.'s course of

therapy", among other things. *Id.* **at 17.** In denying Defendants'
Motion for Summary Judgment on the civil conspiracy claim, this
Court wrote that Plaintiff "attests that Defendants defied the
Family Court Order at the behest of the Knutsens, and that
Defendants rendered professionally negligent psychological
opinions in collusion with them to her detriment. Taking
Plaintiff's factual allegations to be true, she has made a
plausible claim that the Defendants engaged in the allegedly
tortious actions discussed above in collaboration with the
Knutsens, who had technically hired them pursuant to the Family
Court Order." *Id.* **at 19-20.** It will ultimately be up to the jury
to decide the questions of fact. Defendants' motion for judgment
on the pleadings is denied.

## II. Subject Matter Jurisdiction

Defendants also advance two arguments for dismissing this
case under Federal Rule of Civil Procedure 12(b)(1). "A case is
properly dismissed for lack of subject matter jurisdiction under
Rule 12(b)(1) when the district court lacks the statutory or
constitutional power to adjudicate it." *Makarova v. United
States*, 201 F.3d 110, 113 (2d Cir. 2000). "The burden of proving
jurisdiction is on the party asserting it." *Robinson v. Overseas
Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

### A. *Rooker-Feldman* Doctrine

Defendants argue that the *Rooker-Feldman* doctrine bars lower federal courts from considering claims arising out of family court orders, because such claims are necessarily inextricably intertwined with state court orders. **ECF 14 at 8**. "Underlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state court decisions." *Hoblock v. Albany Cty Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), the Supreme Court explained that the *Rooker-Feldman* doctrine was meant to occupy a "narrow ground" and "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *See also Lance v. Dennis*, 546 U.S. 459, 464 (2006). The Second Circuit has explained that four factors must be present for *Rooker-Feldman* to apply: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been

rendered before the district court proceedings commenced. *Hoblock*, 422 F.3d at 85.

Here, neither factor two nor factor three is met. The second factor is not satisfied, where the third-party's actions do not meet the requirement of having been "produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Hoblock*, 422 F.3d at 88; *see also Morrison v. City of New York*, 591 F.3d 109, 110, 113 (2d Cir. 2010) (finding that plaintiff's complaint should not have been dismissed under the *Rooker-Feldman* doctrine where plaintiff sought "relief based on discretionary decisions of the hospital that were not mandated by the Family Court order," even though defendants argued that the hospital's actions were compelled by the order). Here, Plaintiff does not allege, and Defendants to not appear to argue, that the actions of Defendants were mandated by the Family Court Order. The third factor is not met because the Second Circuit has further clarified that it is applicable where the "requested federal court remedy of an alleged injury caused by a state court judgment would require overturning or modifying that state court judgment," *McNamara v. Kaye*, 360 Fed. Appx. 177 (2d Cir. 2009) (summary order), and that in order to satisfy this requirement in the child custody context, a plaintiff must "plainly" seek to "repair to federal court to undo the [Family Court] judgment," *Green v. Mattingly*, 585 F.3d 97, 102 (2d Cir.

2009). Here, Plaintiff does not ask this Court to undo the
Family Court Order. *See McKnight v. Middleton*, 699 F. Supp. 2d
507, 515 (E.D.N.Y. 2010) ("[T]he Court follows the Second
Circuit's reasoning in *McNamara* and *Green* and finds that *Rooker-
Feldman* does not apply to Plaintiff's claims that only seek
monetary damages or prospective injunctive relief and do not
seek to overturn a child custody award.").

B. Domestic Relations Exception

Next, Defendants argue that the domestic relations
exception to diversity jurisdiction applies here to defeat
subject matter jurisdiction for this case. Defendants cite an
unpublished Second Circuit decision from 2009, in which a panel
stated that "[a]lthough we recognize that the  domestic
relations 'exception is very narrow,' a plaintiff cannot obtain
federal jurisdiction merely by rewriting a domestic dispute as a
tort claim for monetary damages" and explained that tort claims
beginning and ending in a domestic dispute were thus
inappropriate in federal district court. *Schottel v. Kutyba*, No.
06-1577-cv, 2009 WL 230106, at *1 (2d Cir. Feb. 2, 2009)
(internal citation omitted). This Court is unwilling to expand
*Schottel* to conclude that all tort claims for money damages that
have some relation to domestic issues must be thrown out of
lower federal courts. *See, e.g., Khrapko v. Splain*, 389 F. Supp.
3d 199, 203 (W.D.N.Y. 2019) ("To be sure, the [domestic

relations] exception is not exceptionally broad. . . . It does not mean that federal courts lack jurisdiction to hear any claim even touching upon a domestic dispute." (internal citation omitted)).

The Supreme Court has explained that the domestic relations exception to subject matter jurisdiction generally "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992). The Second Circuit has since stated that subject matter jurisdiction may also "be lacking in actions directed at challenging the results of domestic relations proceedings." *Martinez v. Queens Cty. Dist. Att'y*, 596 F. App'x 10, 12 (2d Cir. 2015) (summary order). Interpreting this guidance, some district courts in the Second Circuit have found a lack of subject matter jurisdiction in cases asking for monetary damages, especially when those cases also ask the federal court to change the result of state domestic relations proceedings. *See, e.g., El-Shabazz v. Henry*, No. 12-cv-5044 BMC, 2012 WL 5347824, at *3 (E.D.N.Y. Oct. 29, 2012) (dismissing claims where plaintiff "explicitly requests" that the Court vacate state court orders such that, if the court were to consider the claims, it would have to "review state court custody determinations," and also dismissing claims for money damages where those claims, though "largely framed as § 1983 claims, are

substantive challenges to the correctness of defendants'
rulings, reports, and statements in the state custody
proceedings. But plaintiff may not use § 1983 as a vehicle to
circumvent the domestic relations exception and re-litigate the
underlying child custody dispute."); *see also Shivananjappa v.
Bhayani*, No. 20-CV-1138(KAM)(CLP), 2020 WL 1957528, at *2
(E.D.N.Y. Apr. 23, 2020) (dismissing claims where plaintiff
"asks the court to issue custody, child support, and spousal
support rulings" as well as claims for unspecified damages where
the "damages arise out of the domestic dispute"); *Ramos v.
Putnam Family Court*, No. 15-cv-1443(VAB), 2017 WL 3083727, at
*4-5 (D. Conn. July 18, 2017) (dismissing claims as barred by
the domestic relations exception where the Complaint "requests
that the Court 'reconnect' him with his children and 'visitation
upon release'" and stating that "[e]ven to the extent that Mr.
Ramos requests monetary relief, his claims may still be
precluded by the domestic relations exception.").

In this case Plaintiff does not take issue with the state's
adjudication of the domestic dispute. Though Defendants do not
specifically analyze any of the claims, the abuse of process
claim appears to be the most at issue, where this Court found
that Plaintiff stated a plausible claim based on allegations of
non-testimonial actions taken by Defendants. **ECF 10 at 7**. The
actions alleged which this Court found made out a plausible

claim were (1) Defendants' failure to produce documents subject to subpoena, and (2) threats made by Defendants against Plaintiff's expert witness. *Id.* This Court finds that the abuse of process claim does not fall under the narrow domestic relations exception where Plaintiff has not asked to change the *results* of the child custody proceedings.

### Conclusion

For the aforementioned reasons, Defendants' motion is **denied.**

DATED at Burlington, in the District of Vermont, this 3rd day of March, 2021.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge