UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

```
KAREN CEGALIS                      :
                                   :
          Plaintiff,               :
                                   :
     v.                            :   Case No. 2:19-cv-153
                                   :
TRAUMA INSTITUTE & CHILD TRAUMA    :
INSTITUTE, INC.; RICKY GREENWALD;  :
BAMBI RATTNER                      :
                                   :
          Defendants.              :
```

## OPINION AND ORDER

Plaintiff Karen Cegalis brings this action against Defendants Trauma Institute & Child Trauma Institute, Inc., Ricky Greenwald, and Bambi Rattner (collectively, "Defendants"). Following the Court's rulings on Defendants' motions to dismiss for failure to state a claim, for lack of subject matter jurisdiction, and for judgment on the pleadings, the claims remaining are abuse of process, breach of the covenant of good faith and fair dealing ("bad faith"), professional negligence, negligent infliction of emotional distress ("NIED"), and civil conspiracy. Plaintiff seeks compensatory and punitive damages.

Now before the Court is Defendants' motion under Federal Rule of Civil Procedure 56 and Local Rule 56 for summary judgment. For the reasons discussed below, Defendants' motion for summary judgment is **granted.**

## PROCEDURAL HISTORY

This action arises out of a long-term custody dispute concerning the Plaintiff, her minor son L.C., and L.C.'s father, Raymond Knutsen, and stepmother, Marilyn Knutsen. Through the course of the custody dispute, the Knutsens accused Plaintiff of abusing L.C. and making threats against them and L.C. In an order issued on February 10, 2015 (the "Family Court Order"), the Rutland Family Court concluded that these allegations had no factual foundation in the record. Regardless, the Family Court granted sole custody of L.C. to his father, Raymond Knutsen, out of a concern for L.C.'s psychological best interest. The Family Court Order also directed Raymond Knutson to obtain the services of a qualified child trauma therapist for L.C., subject to several conditions. The Family Court barred the Knutsens from interfering in L.C.'s therapy and gave Plaintiff Cegalis qualified access to L.C.'s therapy records, subject to the therapists' determination that release of the records was in L.C.'s best interest. **ECF 1-2 at 13–14.** Raymond Knutson hired Defendants to provide L.C. with the court-ordered trauma therapy.

Plaintiff filed this action on September 4, 2019. **ECF 1 at 1-2.** On September 27, 2019, Defendants moved to dismiss Plaintiff's Complaint for failure to state a claim on which relief could be granted. **ECF 5.** On April 30, 2020, this Court

granted in part and denied in part Defendants' motion to dismiss, holding that Plaintiff had stated plausible claims for abuse of process, bad faith, professional negligence, NIED, and civil conspiracy. **ECF 10**. The Court also held that Plaintiff's request for punitive damages is an issue of fact for a jury to determine.

Defendants filed their Answer to the Complaint, **ECF 12**, on May 14, 2020 and subsequently filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). **ECF 14**. On March 4, 2021, the Court denied Defendants' motion, explaining that the Court properly considered the Family Court Order in order to find that Cegalis had pled plausible claims of abuse of process, bad faith, professional negligence, NIED, and civil conspiracy. **ECF 35 at 5-7**.

In September 2021, Plaintiff's attorney moved to withdraw, after which Plaintiff proceeded under a "temporary" pro se appearance. **ECF 41**. On December 1, 2021, Defendants filed a motion to dismiss under Rule 41(b) for failure to prosecute, **ECF 47**, and on March 17, 2022, Defendants filed their pending motion for summary judgment. **ECF 58**. Plaintiff opposed Defendants' motion for summary judgment on June 6, 2022, **ECF 65**, and Defendants replied on June 21, 2022. **ECF 68**.

On September 27, 2022, this Court issued an Order and
Opinion denying Defendants' motion to dismiss under Rule 41(b)
and ordering Early Neutral Evaluation ("ENE") as required under
Local Rule 16.1. **ECF 69.** Though Defendants' motion for summary
judgment had been fully briefed and was ready for the Court's
consideration at that time, the Court held that the parties must
participate in an ENE session with Attorney Michael J. Marks in
a genuine effort to settle or narrow the scope of the dispute
before the Court would consider the pending motion for summary
judgment.

The parties participated in ENE on April 26, 2023, after
which the Court took the pending motion for summary judgment
under advisement following supplemental briefing.

<u>**UNDISPUTED FACTS**</u>

In February 2015, the Rutland Family Court concluded a
custody dispute between Plaintiff, Raymond Knutsen, and Marilyn
Knutsen, awarding sole custody of L.C. to his father, Raymond
Knutsen. Through the course of the custody dispute, the Knutsens
accused Plaintiff Cegalis of making threats against them and
sexually abusing L.C., her son. The Chittenden Unit for Special
Investigations, the U.S. Department of Homeland Security, the
Rutland Police Department, and the Department for Children and
Families investigated the accusations and were unable to
substantiate the sexual abuse allegations raised against

Plaintiff. **ECF 1-2 at 1.** In an Order issued on February 10, 2015 (hereafter "The Family Court Order") the Rutland Family Court concluded that the allegations lacked any factual foundation in the record. **ECF 1-2 at 10.** Regardless, the Rutland Family Court granted sole custody of L.C. to Raymond Knutsen and ordered a stop to reunification efforts with Plaintiff Cegalis out of concern for L.C.'s psychological best interest. **ECF 1-2.**

The Family Court Order additionally required Raymond Knutson to seek the services of a qualified child trauma therapist for L.C.; the Family Court's order for trauma therapy and its conditions are at the heart of this dispute. **ECF 1-2 at 13.** As the Family Court had observed the Knutsens' attempts to interfere in L.C.'s past therapy experiences, the Family Court Order barred the Knutsens from interfering in L.C.'s therapy. **ECF No. 1-2 at 13.** The Family Court Order also required that Cegalis have qualified access to L.C.'s therapy records, that Raymond Knutsen provide proof of L.C.'s engagement in treatment, and that the therapist be permitted to communicate with the attorneys in the case. **ECF 1-2 at 13.**

Raymond Knutsen hired Defendants to provide L.C. with the court-ordered trauma therapy. **ECF 58-8 at 5.** Defendants' work culminated in a "Limited Psychological Report" issued on June 15, 2015, which Plaintiff Cegalis received but which was never

admitted as evidence in any court proceeding. **ECF 58-8 at 14; ECF 58-3 at 2.**

In a subsequent civil case brought by Cegalis against Raymond and Marilynn Knutsen concerning Plaintiff's parental alienation, Cegalis's counsel issued a subpoena to the "Keeper or Records, Trauma Institute & Child Trauma Institute" for the records of L.C.'s trauma therapy. *Cegalis v. Knutsen*, Rutland Superior Court No. 238-4-15 Rdcv, **ECF 58-5.** The subpoena became subject to a court ruling issued the following year, **ECF 58-6,** enforcing yet modifying the subpoena such that counsel to the Trauma Institute would make all subpoenaed records available to parties' counsel for review and copying. During the same proceedings in the Rutland Superior Court, Defendant Rattner testified that L.C. should not be reunited with Plaintiff, and Defendant Greenwald testified that plaintiff should not have contact with L.C. on account of past abuse in the parent-child relationship. Dr. Rattner additionally testified that she had received and read the February 10, 2015 Family Court Order before L.C.'s therapy began, that Ms. Knutsen was present in the room with L.C. during every trauma therapy session with Defendants, that Ms. Knutsen provided a list of the "worst things" that had happened to the minor patient pursuant to the Institute's standard protocol for trauma therapy, and that Ms.

Knutsen was present in the room when L.C. offered his own list of "worst things" that had happened to him. **ECF 79-2 at 7.**

Defendants Greenwald and Rattner have subsequently been professionally disciplined for their work on L.C.'s case. On June 26, 2018, the Massachusetts Board of Registration of Psychologists entered into a consent decree disciplining both Rattner and Greenwald for taking on a child custody evaluator role when their "financial interests and relationship with the minor child's father and/or stepmother impaired [their] impartiality, competence and effectiveness, which exposed the minor child to harm." **ECF 79-7 at 1; ECF 79-8 at 1.** This suit further challenges additional aspects of the trauma therapy the Defendants provided to L.C. and the harm that care allegedly caused to the Plaintiff.

## JURISDICTION

This Court has proper diversity jurisdiction over this case under 28 U.S.C. § 1332. The parties are residents of different states and the amount in controversy exceeds $75,000.

## STANDARD OF REVIEW

A court shall grant summary judgment if the moving party shows no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). At the summary judgment stage of litigation, "the court must construe all evidence in the light most favorable to

the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010). And at summary judgment, "the movant bears the burden of demonstrating the absence of a question of material fact." If the movant meets this burden, the opposing party must set out specific facts showing a genuine issue of material fact appropriate for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The trial court's function when deciding a motion for summary judgment "is not to weigh the evidence or resolve issues of fact, but to decide whether, after resolving all the ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

## DISCUSSION

### 1. Statute of Limitations

A preliminary question before the Court concerns whether Plaintiff's admissions during discovery alter the Court's prior assessment that the relevant three-year statute of limitations did not begin to run until June, 2017.

Under Vermont Law, inquiry notice triggers the accrual of a statute of limitations. "A cause of action accrues 'upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary

intelligence and prudence on inquiry which, if pursued, would lead to the discovery." *Jadallah v. Town of Fairfax*, 207 Vt. 413, 420 (2018) (quoting *Agency of Nat. Res v. Towns*, 168 Vt. 449, 452 (1998)). "When determining inquiry notice, the question is what a reasonable person would have done when presented with the information." *Jadallah*, 207 Vt. at 421. As this Court has already explained, "[a] cause of action is generally deemed to accrue at the earliest point at which a plaintiff discovers an injury and its possible cause." *Earle v. State*, 170 Vt. 183, 190 (1999).

Since the Court's Order and Opinion on Defendants' motion to dismiss (**ECF 10**), Plaintiff has admitted to receiving L.C.'s Limited Psychological Report on June 15, 2015, after the Defendants completed L.C.'s trauma therapy treatment. On August 3, 2015, Plaintiff moved the Rutland Family Court to seal the report in her civil parental reunification action against the Knutsens. Plaintiff's filings and affidavits have cited Plaintiff's receipt of the Limited Psychological Report as the root of the injury that Defendants' conduct has caused her: that the Report "[l]anded on Plaintiff like a bomb." **ECF 79 at 10.** Defendants contend that these admissions demonstrate Plaintiff had inquiry notice of the basis of her cause of action by August of 2015 at the latest, which would time bar her suit.

The Court finds that Plaintiff's admission that she discovered the Limited Psychological Report in June 2015 did not cause the statute of limitations for her present causes of action to accrue. Inquiry notice requires not only that the Plaintiff discover their injury, but also that they discover its possible cause. It is unreasonable for a prospective plaintiff in receipt of an unfavorable medical opinion stemming from another's private therapeutic relationship to assume that its contents, no matter how harmful, must be the product of unlawful wrongdoing warranting legal investigation. Upon receipt of the Limited Psychological Report, Plaintiff had no reasonable basis for believing that the contents of report may have stemmed from the tortious conduct she now alleges against Defendants. It was not until June 7, 2017, that Plaintiff discovered the facts underlying this cause of action—chiefly Ms. Knutsen's involvement in L.C.'s therapy—such that inquiry notice of her causes of action were triggered.

For these reasons, the Court finds Plaintiff's claims are not time barred and Defendants' motion for summary judgment on this ground is **denied**.

## 2. Count I – Abuse of Process

To state a claim for abuse of process under Vermont Law, a plaintiff must plead and prove: (1) an illegal, improper, or unauthorized use of a court process; (2) an ulterior motive or

10

purpose; and (3) a resulting damage to the plaintiff. *See Jacobsen v. Garzo*, 149 Vt. 205, 208 (1988).

Plaintiff's abuse of process cause of action has proceeded to this stage of litigation on two theories: (1) Defendants' alleged failure to respond to a subpoena for records of L.C.'s trauma therapy; and (2) Defendants' alleged threats against Plaintiff's expert witness, Dr. Mart.

a. The Subpoena Response

It is undisputed that through the course of Plaintiff's civil parental reunification action, a subpoena was issued to "Trauma Institute & Child Trauma Institute Inc."; neither Defendants Greenwald nor Rattner, however, were individually subject to this subpoena. The Court therefore preliminarily dismisses the claim for abuse of process for the alleged noncompliance with the subpoena as to Defendants Greenwald and Rattner individually.

The Court also finds that Plaintiff has brought forth no evidence to support that Trauma Institute & Child Trauma Institute Inc. failed to comply with the subpoena. The subpoena issued by Plaintiff's counsel on July 20, 2015, became subject to a court ruling on August 22, 2016 that modified the mechanics of compliance. Specifically, the court order required the Institute to make all subpoenaed records available for counsel to review, after which the Institute was to make copies for

11

Plaintiff's counsel. The only evidence in the record pertaining to the Institute's noncompliance is testimony from Dr. Rattner that she, a therapist, was not involved in the subpoena response and did not know what was included in the subpoena response. **ECF 58 at 7.** Moreover, the Court finds that Plaintiff has failed to demonstrate causation and damages for the claim of abuse of process based on the alleged noncompliance with the subpoena. *See Levinsky v. Diamond*, 140 Vt. 595, 600, 442 A.2d 1277, 1280 (1982). For these reasons, Defendants' request for summary judgment on the abuse of process claim premised on the alleged noncompliance with a subpoena for L.C.'s records is **granted.**

b. Threats to Plaintiff's Expert to Discourage Testimony

Plaintiff's abuse of process claim also fails under her second theory: that Defendants made threats against Dr. Mart for purposes of retaliation against his testimony in the custody dispute and to discourage him from testifying in the reunification dispute. Plaintiff has offered no evidence of any complaint filed by any Defendant against Dr. Mart to the Vermont Board of Psychologists. Moreover, the facts demonstrate that Dr. Mart testified at two hearings, one prior to the Defendants' involvement in the custody dispute and one after the Defendants' retention by Mr. Knutsen. The evidence does not support, therefore, that Dr. Mart was deterred from testifying or that Defendants issued a complaint against Dr. Mart in retaliation

12

for his testimony. For these reasons, Defendants' motion for summary judgment on the abuse of process claim arising from alleged threats made to Plaintiff's expert to discourage his testimony is **granted.**

### 3. Count III – Professional Negligence

Plaintiff asserts a claim of professional negligence against Defendants premised on a breach of an alleged professional duty of care owed to her by Defendants that Plaintiff argues arose out of the "special relationship" between the parties that was established in the Family Court Order. Cegalis alleges that Defendants breached this duty of care when they allowed the Knutsens to interfere with L.C.'s trauma therapy in direct contravention of the Family Court Order. Cegalis offers that this breach was the proximate cause of damages she suffered from additional estrangement from her son beyond the impact that her loss of custody and prior failed reunification efforts had on their relationship. Applying the plausibility standard to Defendants' earlier motion to dismiss, the Court previously said that the Family Court Order was sufficient to allow Plaintiff to state a claim for professional negligence under the "special relationship" argument. At the summary judgment stage, however, the Court determines that the Family Court Order alone is inadequate evidence of the Defendants' liability to Cegalis under this theory of

professional negligence and that Defendants are therefore entitled to judgment as a matter of law.

To prevail on a claim of professional negligence under Vermont law, a plaintiff must establish the following elements: (1) that the defendant owes a legal duty to conform to a certain standard of care so as to protect the plaintiff from an unreasonable risk of harm; (2) that the defendant committed a breach of this duty by failing to conform to the standard of care; (3) that the defendant's conduct was the proximate cause of the plaintiff's injury; and (4) that the plaintiff suffered actual loss or damage. *Noble v. Boppel*, No. 2:10-CV-35, 2011 WL 830169, at *5 (D. Vt. Mar. 3, 2011) (citing *Wilkins v. Lamoille Cnty. Mental Health Servs., Inc.*, 179 Vt. 107 (2005)).

"The first prerequisite in any negligence proceeding must be to establish the existence of a legally cognizable duty." *Smith v. Day*, 148 Vt 595, 597 (1987). In prosecuting a claim of professional negligence against Defendants, Cegalis must offer facts establishing that Defendants owed to her a duty of care throughout their treatment of her son, L.C., as his trauma therapists. Defendants argue that the relationship between themselves and Cegalis did not give rise to a duty of care owed by Defendants to Cegalis. As Vermont has not recognized a transferred negligence doctrine establishing a duty of care owed by mental health professionals to parents of a therapeutic

client to not negligently create false memories of sexual abuse,
the question of duty turns on whether the Family Court Order
established a "special relationship" between Defendants and
Plaintiff that created a duty of care.

"The existence of a duty [in a negligence action] is a
question of law to be decided by the court." *Montague v. Hundred
Acre Homestead, LLC*, 209 Vt. 514, 520 (2019) (internal citations
omitted). While "[g]enerally, there is no duty to control the
conduct of another to protect a third party from harm," the
Vermont Supreme Court has identified exceptions to this rule
where a "special relationship" among the parties exists such
that one may be responsible for the tortious conduct of another.
The issue of the "existence [of a special relationship] is
primarily a question of law." *Pietrangelo v. Alvas Corp.*, No.
5:09-CV-68, 2010 WL 5156385, at *7 (D. Vt. Dec. 14, 2010),
aff'd, 686 F.3d 62 (2d Cir. 2012), and aff'd, 487 F. App'x 629
(2d Cir. 2012) (quoting *Endres v. Endres*, 185 Vt. 63, 67
(2008)).

In *Peck v. Counseling Services of Addison County, Inc*, the
Vermont Supreme Court identified three instances in which such a
"special relationship" would give rise to a legal duty to
control, warn, and/or protect: (1) where the relationship "gives
the one a definite control over the actions of the other[;]" (2)
where the relationship imposes a "duty upon one to control the

actions of another[;]" and (3) where the relationship "gives a third person a right to protection." 146 Vt. 61, 65 (1985)(citations omitted). When a "special relationship" exists such that one person may be responsible for the conduct of another, a third party may have a right of action against the responsible party for the tortious conduct of the other.

Cegalis pursues two lines of argument under this "special relationship" exception, neither of which will carry the day: (1) that a special relationship existed by way of the Defendants' ability and duty to control the Knutsens' interference in L.C.'s therapy such that Defendants could be held liable for the harm the Knutsens caused to Plaintiff; and (2) that the Family Court Order created a special relationship between Plaintiff and Defendant that gave Plaintiff a right to protection.

Under the first line of reasoning, Cegalis asserts that Defendants had "unfettered ability to control whether the Knutsens interfered in L.C.'s therapy." **ECF 79 at 12.** Courts have applied a comparable control-based theory in employer-employee relationships to impose liability on an employer for their employee's actions against the third party. *See, e.g.*, *Bradley v. H.A. Manosh Corp.*, 157 Vt. 477, 479 (1991) (establishing employer's liability for off-duty employee's negligent conduct while on employer's premises); *Poplaski v.*

16

*Lamphere*, 152 Vt. 251, 257 (1989) (finding employer did not "take control" of intoxicated employee such that a duty to third persons arose). However, the Court finds no support for extending this theory of duty to the relationship between a court-ordered therapist of a minor and the minor's non-custodial parent with respect to the harm that one parent's involvement in the minor's therapy might have on another parent. Even if the Family Court Order gave Defendants the ability, need, and opportunity to control the Knutsens' conduct and prevent their interference in L.C.'s therapy, that duty extends only to shield L.C. from harm, and not the Plaintiff. Thus, because Defendants' ability to control the Knutsens' involvement in L.C.'s therapy did not create a duty to protect Plaintiff from reasonable risk of harm, Plaintiff's first theory of professional negligence must fail.

Plaintiff's argument under her second line of reasoning fails for similar reasons. In Vermont, a third party may have a right to protection "where a mental health professional is aware that a patient poses a risk of harm to a[ ] specific third party." *Tanks v. NEAS, Inc.*, 519 F. Supp. 2d 645, 653 (S.D. Miss. 2007) (citing *Peck*, 146 Vt. at 63). *Peck*, for instance, concerned a "relationship between a clinical therapist and [their] patient" that "create[d] a duty to exercise reasonable care to protect a potential victim from [the patient's]

17

conduct." *Peck*, 146 Vt. at 65. Here, however, it is not the patient who posed a risk to the plaintiff, but rather the clinical therapist, a parent of the patient, or the two in concert. The caselaw does not support that a therapist owes a patient's non-custodial parent a right to protection from a therapist's own conduct or the conduct of another parent of the patient.

And, even if the Family Court Order did create a "special relationship" by which Plaintiff was granted a right to protection, the Plaintiff has introduced no evidence to contradict that the duty owed under that right was limited. The Family Court Order provided that Cegalis was to have access to L.C.'s therapy records only to the extent that her access was not against L.C.'s best interest. And though Family Court Order provided that the trauma therapist may recommend controlled contact between L.C. and Cegalis if it was in L.C.'s best interest, it did not require such contact. Both provisions outlining the qualified duties the trauma therapist potentially owed to Plaintiff were limited by the primary duty the trauma therapist owed to L.C., the patient, to act in his best interest. Moreover, though the Family Court Order included instructions regarding the Knutsens' permitted involvement or interference in L.C.'s therapy, there is no evidence this provision sought to protect Cegalis instead of or in addition to

protecting the patient and ensuring he received proper trauma treatment. Thus, even if Cegalis could establish that Ms. Knutsen's participation in L.C.'s therapy—including her input into his "worst things list" and her presence in the room during therapy sessions—was a violation of the Family Court Order, it would violate a duty owed to L.C., the patient, not Cegalis.

In sum, the line of cases concerning special relationships that confer a duty on one to protect a third party from the tortious conduct of another bears no similarity to the relationships at play between Cegalis, L.C., the Knutsens, and Defendants. If the Family Court Order created any duty beyond the regular standard of care owed by a therapist to their patient to control the Knutsens' involvement in L.C.'s therapy, that duty was owed to L.C. and not to Plaintiff. For these reasons, Defendants' motion for summary judgment on the professional negligence claim is **granted.**

### 4. Count VII – Negligent Infliction of Emotional Distress ("NIED")

Defendants next contend that Plaintiff's claim for NIED must fail because Vermont has not expanded NIED claims to include an exception applicable to the facts of this case. Vermont typically follows the general rule that "absent physical impact[,] emotional distress damages are only recoverable in cases of ordinary negligence when the distress is accompanied by

substantial bodily injury or sickness." *Vincent v. DeVries*, 193
Vt. 574, 580 (2013) (citing *Fitzgerald v. Congleton*, 155 Vt.
283, 292 (1990)). The Vermont Supreme Court has acknowledged
several exceptions to this rule in "special circumstances"
involving "special relationships" and undertakings "fraught with
the risk of emotional harm." *Id*; *see also Fitzgerald*, 155 Vt. at
292 n.7 ("[W]e do not necessarily foreclose the possibility of
allowing for emotional-distress damages absent physical
manifestations under special circumstances where the nature of
the tortious act guarantees the genuineness of the claim.");
*see*, *e.g.*, *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810–
11 (D.C. 2011) (a doctor's negligent misdiagnosis of a patient
with HIV warranted emotional distress damages); *Nome Commercial
Co. v. Nat'l Bank of Alaska*, 948 P.2d 443, 453 (Alaska 1997)
(emotionally laden contracts such as "to marry, to conduct a
funeral, to sell a sealed casket, to conduct a cesarean birth,
[or] to surgically rebuild a nose" may be the basis for
emotional damages (quotation omitted)). The Vermont Supreme
Court's analysis in *Devries* highlights that liability for NIED
may be proper where "the circumstances are such that any
reasonable person would suffer serious emotional harm, when the
severity of the harm or the effect of the harm limits the
victim's activities of daily life, and when the scope of
liability is sufficiently limited." *Id*. at 582 (quoting

Restatement (Third) of Torts: Physical & Emotional Harm ch. 8,
scope note).

The Vermont Supreme Court has pointed to the D.C. Court of
Appeals' NIED standard as a model for assessing NIED claims. As
this Court explained in its denial of Defendants' motion to
dismiss, **ECF 35**, the D.C. standard allows a plaintiff to recover
for NIED when they can show:

> (1) the defendant has a relationship with the
> plaintiff, or has undertaken an obligation to the
> plaintiff, of a nature that necessarily implicates the
> plaintiff's emotional well-being, (2) there is an
> especially likely risk that the defendant's negligence
> would cause serious emotional distress to the
> plaintiff, and (3) negligent actions or omissions of
> the defendant in breach of that obligation have, in
> fact, caused serious emotional distress to the
> plaintiff.

*Id*. at 583 (quoting *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d
789, 810-11 (D.C. 2011)). In other words, a special relationship
for NIED purposes exists when a defendant "has undertaken an
obligation to benefit the plaintiff *and* if that undertaking, by
its nature, creates not only a foreseeable, but an especially
likely, risk that defendant's negligent performance of the
obligation will cause serious emotional distress." *Id.* at 582-83
(quoting *Hedgepath*, 22 A.3d at 802) (emphasis in original).

Viewing the evidence in the light most favorable to the
Plaintiff, the Court finds that Defendants have demonstrated
that they are entitled to judgment as a matter of law on the

NIED claim. Applying the plausibility standard, we said
previously that the Family Court Order was sufficient to state a
claim for NIED. ECF 10 at 17. However, having allowed the
parties time for discovery, the Court finds that while it may
have been foreseeable that Ms. Knutsen's involvement in L.C.'s
trauma therapy may cause Plaintiff serious emotional distress,
Plaintiff has offered no facts to support that the Family Court
Order created an obligation flowing from Defendants to Plaintiff
to prevent that emotional distress. For this reason, the NIED
claim must fail.

    As with Plaintiff's claim for professional negligence,
Plaintiff has not established that a special relationship
existed between herself and Defendants such that Defendants owed
to her an obligation that necessarily implicated her emotional
well-being. By taking on L.C. as a patient subject to the Family
Court Order, Defendants undertook no obligation to benefit the
Plaintiff. To the contrary, Defendants were retained pursuant to
the Family Court Order to perform trauma therapy for L.C.'s
benefit alone; the duty of therapists to exercise due care runs
to their patients. Defendants' scope of treatment under the
Family Court Order did not include reunification therapy. And
while the Family Court Order opened a door for Plaintiff to have
contact with L.C. in the context of his trauma therapy, that
opportunity was limited by the trauma therapist's professional

judgment and recommendation as to whether that contact was in L.C.'s best interests. ECF 1-2 at 13-14. For these reasons, Defendants' request for summary judgment on the NIED claim is **granted.**

5. **Count II – Breach of the Covenant of Good Faith and Fair Dealing**

Under Vermont Law, the covenant of good faith and fair dealing is implied in every contract. *LoPresti v. Rutland Regional Health Services, Inc.*, 177 Vt. 316, 332 (2004). The tort of "bad faith" is not an independent action; it arises only where an underlying contract exists, i.e., when the parties are in contractual privity. *Murphy v. Patriot Ins. Co.*, 197 Vt. 438, 443 (2014). Defendants argue that no contractual privity between Plaintiff and Defendants emerged out of the Family Court Order and thus Defendants are entitled to judgment as a matter of law on the claim for breach of good faith and fair dealing.

When a party hires a psychologist pursuant to a family court order to treat a minor, contractual privity between that party and the court-ordered psychologist is possible. *See Politi v. Tyler*, 170 Vt. 428, 434 (2000). For example, in *Politi* the Vermont Supreme Court found privity of contract between a psychologist and the party who contracted their services for a court-ordered forensic psychological evaluation. *Politi*, however, involved psychologist who had entered into a contract

with the plaintiff, leading the court to dismiss the psychologist's assertion that their duty was owed only to the family court and not to the party who hired them. But *Politi* did not address whether a family court order alone, absent an independent contractual relationship between the party and the court-ordered psychologist, would be sufficient to establish contractual privity between the two.

In contrast to *Politi*, Plaintiff has no contractual relationship with the Defendants in this case. The Family Court Order required Raymond Knutsen to obtain the services of a trauma therapist for L.C., **ECF 1-2 at 13**; pursuant to that order, Raymond Knutsen contracted with Defendants to provide that therapy. Plaintiff was not a party to that contractual relationship between Raymond Knutsen and Defendants. And though the Family Court Order included instructions regarding the Knutsens' permitted involvement in L.C.'s therapy and provided to Plaintiff a qualified right to access L.C.'s therapy records, the Family Court Order also determined that the trauma therapist may prevent the release of L.C.'s records to Plaintiff if they found that such access was not in L.C.'s best interests, and only required the trauma therapist to allow L.C. to contact Plaintiff while in the therapist's office if the trauma therapist recommended it. **ECF 1-2 at 13**. The Court therefore finds that the Family Court Order alone is insufficient to

establish a contractual relationship between Plaintiff and
Defendants. As the Court finds no contractual privity between
Plaintiff and Defendants, the Court need not address the issue
of proximate cause and **grants** Defendants' motion for summary
judgment on Count II for breach of the covenant of good faith
and fair dealing.

### 6. Count IV – Civil Conspiracy

Vermont law defines a criminal conspiracy as a "combination
of two or more persons to effect an illegal purpose, either by
legal or illegal means, or to effect a legal purpose by illegal
means." *Akerley v. N. Country Stone, Inc.*, 620 F. Supp. 2d 591,
600 (D. Vt. 2009) (citing *Boutwell v. Marr*, 71 Vt. 1, 42 A. 607
(1899)). The Vermont standard to bring a civil action for
conspiracy adds the requirement that the plaintiff must be
damaged by something "done in furtherance of the agreement," and
that "thing done [must] be something unlawful in itself . . ..
[T]here can be no recovery unless illegal means were employed."
*Boutwell*, 42 A. at 609 (1899). "Vermont law is clear that civil
conspiracy differs from criminal conspiracy in its requirement
of both an illegal purpose and an illegal act to establish
liability." *Jenkins v. Miller*, No. 2:12-CV-184, 2020 WL 5128472,
at *4 (D. Vt. Aug. 31, 2020) (citing Boutwell v. Marr, 42 A.
607, 609 (Vt. 1899)).

The Second Restatement of Torts, to which the Vermont Supreme Court frequently looks when defining the elements of a claim, *see*, *e.g.*, *Glassford v. Dufresne & Assocs., P.C.*, 199 Vt. 422, 430 (2015), describes tort liability for persons acting in concert as follows:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.... Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. The agreement need not be expressed in words and may be implied and understood to exist from the conduct itself.

*Wei Wang v. Shen Jianming*, No. 2:17-CV-00153, 2019 WL 3254613, at *7 (D. Vt. July 19, 2019) (quoting Restatement (Second) of Torts § 876 (1979)). Under this framework, Plaintiff must prove either that the Defendants acted in "common design" with the Knutsens to complete a tortious act, or that the Defendants assisted the Knutsens in conduct that the Defendants knew was in breach of a duty the Knutsens owed to the Plaintiff, or that the Defendants substantially assisted the Knutsens in accomplishing a tortious act by themselves breaching a duty owed to a third party.

The conspiracy alleged at the heart of this case concerns a purported agreement between Defendants and the Knutsens to act in non-compliance with the Rutland Family Court Order by allowing Ms. Knutsen to interfere with L.C.'s trauma therapy in order to reinforce false memories of trauma in L.C. involving Plaintiff. Plaintiff contends that the Defendants' prior review of the Rutland Family Court Order put Defendants on notice that "interference" by the Knutsens in L.C.'s treatment would violate the Order, that Ms. Knutsen's contribution to the "worst things list" and her presence in the room during therapy sessions constitute "interference" and evidence an agreement between the Defendants and the Knutsens to violate the Family Court Order, and that this alleged unlawful interference caused Plaintiff harm. According to Plaintiff, Defendants "breached their obligations of ordinary care and good faith owed to [her] under the laws of Vermont and the Family Court Order" in furtherance of their conspiracy. ECF 29 at 4.

For several reasons, Plaintiff has failed to establish the required element of civil conspiracy that she be damaged by "something done in furtherance of the agreement" that "was unlawful in itself." *Boutwell*, 42 A. at 609 (1899). To start, Plaintiff has presented no evidence that Ms. Knutsen's involvement in L.C.'s trauma therapy amounted to the "interference" that the Rutland Family Court Order proscribed.

To the contrary, Defendant Rattner testified that a parent's participation in the creation of the "worst things list" is consistent with "standardized protocols." ECF 79 at 6. Plaintiff has offered no evidence beyond her critique of the eye movement desensitization and reprocessing ("EMDR") technique used by Defendants to support that Defendants departed from their normal protocol in their treatment of L.C.'s trauma. For these reasons, the Court concludes that Ms. Knutsen's contribution to the "worst things list" neither constitutes a violation of the Family Court Order nor evidences an agreement between Defendants to violate that Order, to implant false memories, or to cause harm to the Plaintiff. The Court therefore finds that Ms. Knutsen's involvement L.C.'s treatment was not itself unlawful.

The key flaw in Plaintiff's assertion of a civil conspiracy claim against Defendants, however, lies in the alleged tortious conduct with which she charges Defendants. Plaintiff alleges that it was Defendants' production of the Limited Psychological Report that has harmed her. ECF 79 at 10. More specifically, she claims that Ms. Knutsen's participation in L.C.'s therapy harmed her because it allowed Defendants and Ms. Knutsen to implant false memories of trauma in L.C. that have negatively impacted Plaintiff's relationship with her biological son. For two reasons, this conduct was not tortious or unlawful in itself. First, while it is true that the Rutland Family Court found no

evidence to substantiate the allegations that the Plaintiff had abused her son, Plaintiff has cited no authority stating that such a ruling precludes a therapist from exploring and addressing aspects of their patient's past that involves allegations that have not been proven in a court. Second, Plaintiff has offered no evidence to support that Defendants engaged in tortious conduct because, for the reasons stated above, they owed no duty to the Plaintiff.

As previously discussed, this Court is not in a position to recognize a transferred negligence doctrine establishing a duty of care owed by mental health professionals to parents of a patient to not negligently create false memories of sexual abuse by that parent when the State has not done so. *See Maska U.S., Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74, 80 (2d Cir. 1999). Nor has the Court found merit in the Plaintiff's alternative theories of duty premised on a "special relationship" between the parties in this case. Imposition of a duty in this context through an expansion of any tort theory would have significant public policy implications: it could undermine the essential trust and confidentiality in the patient-medical provider relationship and would hinder a therapist's ability to completely assess and treat their patient's past trauma and abuse. *See Althaus ex rel. Althaus v. Cohen*, 562 Pa. 547 (2000) (psychiatrist who negligently misdiagnosed teenager as sexually

abused by their parent owed no duty of care to the parents who were prosecuted as alleged abusers); *Bird v. W.C.W.*, 868 S.W.2d 767 (Tex. 1994) (finding the need to eradicate sexual abuse of children outweighs the danger of erroneous accusations when a father was exonerated of accusations that he had abused his child). As the Court may not "develop [its] own notions of what should be required by the public policy of the state," it must conclude that the Defendants owed no duty by any legal theory to the Plaintiff.

Because the Defendants owed no duty to Plaintiff to prevent the third-party harm she alleges, the Defendants' treatment of L.C. and production of the Limited Psychological Report was neither tortious nor "unlawful in itself" as required for a Vermont civil conspiracy claim. Plaintiff's claim of civil conspiracy against the Defendants must therefore fail.

For these reasons, Defendants' motion for summary judgment on the civil conspiracy claim is **granted.**

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is **granted.**

SO ORDERED.

DATED at Burlington, in the District of Vermont, this 5th day of May, 2023.

/s/ William K. Sessions III

William K. Sessions III

U.S. District Court Judge